HERGET, Judge.
Plaintiff, John A. Caff arel, a passenger in a truck belonging to Braud Glass, Incorporated, driven by Loles J. Landry, brought suit against Wolf Baking Company, Inc. and its insurer, Liberty Mutual Insurance Company, to recover damages for personal injuries sustained when the Braud Glass vehicle left the roadway of Louisiana Highway 1, allegedly because of the negligence of the driver of the Wolf truck in slowing or stopping at a railroad crossing intersecting the highway. To avoid colliding with the Wolf Baking Company’s wrecker, Landry, driving the Braud Glass truck, attempting to pass the Wolf’s wrecker on the right, left the highway and proceeded on to the shoulder of the road but, unfortunately, struck a railroad signal light standard set in concrete, causing Plaintiff’s injuries.
From a judgment in favor of Defendants rejecting the demands of Plaintiff and dismissing his suit at his costs, Plaintiff appealed.
In a sepaarte suit Braud Glass, Inc. instituted action against the same Defendants for damages caused to its truck as a result of the collision. The two cases were consolidated for the purpose of trial with separate judgments to be rendered.
The accident occurred at a point on Louisiana Highway 1 approximately one mile north of the Town of Plaquemine, Louisiana. The roadway runs generally northerly-southerly and is straight. The accident occurred between 6:30 and 6:45 on the morning of April 6, 1961. Visibility was good; it was daylight, though, because it was raining at the time, the vehicles were proceeding with their lights on.
James Brown, employed by Guaranty Seed Company in Bunkie, Louisiana, was driving his employer’s truck-trailer on this highway in a southerly direction about S :30 a. m. on the date of this accident when the lugs and bearings on the right rear trailer wheel burned out disabling the truck-trailer and, because the shoulder of the *382 road was soft from rain soaking and the truck was loaded, Brown was unable to clear the paved surface of the highway and perhaps two or three feet of the truck-trailer was in the southbound lane of the highway when he brought it to a stop. He placed the flares and because no telephone was available sent word requesting assistance of the Louisiana State Police by a passing motorist who stopped. The troopers arrived at daylight and parked their vehicle on the shoulder of the road to the rear and immediately north of the stalled truck-trailer. The red signal light on top of the police car was kept in operation. The troopers by radio sought aid of a wrecker to remove the stalled truck which was partially obstructing the highway. They invited Brown to sit in the back seat of their patrol car as his clothing was wet, it was ■cold, and there was no heater in Brown’s truck
From a scaled drawing made by Alvin Doyle, measured from the rear of the police vehicle it was some 180 feet south of the point of collision of the Braud truck with the signal light standard. This signal light is located at the point where the railroad intersects the highway.
Ademan Poche, Wolf Baking Company’s head mechanic, driving a wrecker belonging to that company, after repairing a disabled vehicle belonging to his employer in the Town of White Castle south of Plaque-mine was traveling north returning to Baton Rouge; he had been driving at an approximate speed of 45-50 miles per hour; it was raining at the time of the accident at approximately 6:45 a. m., but the rain did not restrict his visibility; upon approaching and observing the stalled truck-trailer and in addition observing the red blinker light aglow and revolving on top of the police car parked to the rear of the stalled truck-trailer, he reduced the speed of his wrecker so that he might readily stop in the event his assistance were needed and no doubt also because of his observation of the police signal light. Poche did not bring his wrecker to a stop but slowed down to approximately 20 miles an hour and continued his northerly course. Upon approaching the railroad crossing, Poche performed the maneuver of perceptibly reducing the speed of his wrecker, coming almost to a stop, in partial compliance with LSA-R.S. 45:563 and LSA-R.S. 45:562, requiring motorists on the highways of Louisiana to stop as admonished by a Louisiana stop sign placed at all railroad track intersections with public roads or streets. As the photographs offered in evidence graphically show, at this intersection there was erected a large sign bearing the inscription “Louisiana Law Stop” and just a few feet north of said sign on the south side of the railroad track was located the railroad signal crossing admonishing the motoring public: “Railroad Crossing,” the standard being equipped with two lights extended on the ends of a horizontal bar, below which is depicted a sign “Stop On Red Signal”. Mr. Poche testified as he was crossing the railroad track he heard a loud noise behind and observed in his rear view mirror the Braud Glass truck some 50 feet behind him skidding, apparently out of control, and immediately thereafter he heard the crash when the Braud truck ran into the signal light standard. He stopped his wrecker a few feet north of the railroad.
James Brown, who was seated in the rear of the police car, testified one of the police officers upon seeing the wrecker made the observation the Brattd Glass truck was going to run into the back of the Wolf Baking Company’s wrecker. Brown turned his head to the rear, observed the “stop” signal flashing red on the rear of the Wolf Baking Company’s wrecker and likewise observed the Braud vehicle go out of control and strike the signal light bearer.
The police officers who were present had no independent recollection of the accident but one gave his testimony from the notes made at the time and the other revealed he would testify similarly to that officer. The testimony of the officers was vague and while they said they saw no signal being given by the driver of the Wolf Baking *383 Company vehicle, manually or by the use of the signal light, of his intention to slow down or stop at the crossing, they were not positive same was not done.
Mr. Caffarel and Mr. Landry both testified they were in the Braud truck on their way to Baton Rouge to work; that they had first noticed the Wolf Baking Company wrecker when it was approximately one mile in front of them; that they were probably traveling at a higher rate of speed, estimated at some 50 miles per hour, as they were overtaking same; that they observed, likewise, the stalled truck-trailer and parked police car with the red light flashing and reduced the speed of their vehicle but that they continued on, when suddenly the Wolf Baking Company’s truck stopped at the railroad crossing thereby creating an emergency and Landry attempted the maneuver of going to the right and between the signals described supra, but, unfortunately, struck the railroad signal light standard.
We are constrained to believe this unfortunate accident resulted from Landry’s and Caffarel’s interest in and observance of the stalled truck-trailer and police car and that their eyes were directed to that scene and in the short, just momentary, time elapsing while they diverted their attention from looking ahead and the distance of approximately 200 feet they traversed in this interval of time they failed to timely observe the slowed down or stopped wrecker until such time the driver, Landry, had the choice of running into the back of the truck or attempting, as he did, to take the shoulder.
Mr. Alvin Doyle made an inspection of the wrecker belonging to Wolf Baking Company, Inc. which Mr. Poche was driving at the time of this collision and found the signal lights to be working and reflectors properly placed.
The cases relied on by Plaintiff involving factual circumstances where the motorist in the lead car is held negligent for making an unanticipated, unsignalled stop on the highway when a driver of the following car, presented with such emergency, collides with the rear of the lead car or upon resorting to diverting maneuvers to avoid striking the lead car, causing damages, are inap-posite. Plere Mr. Poche did what the law demanded of him, stopped at the crossing, and this obligation was or should have been as obvious to Landry as it was to Poche, for, unmistakably, the stop signs were in place and so proclaimed.
In our opinion Mr. Poche was guilty of no negligence and the causation of this accident — the sole proximate cause thereof— was the failure on the part of Mr. Landry to operate his vehicle in safety.
Judgment affirmed.